# Exhibit 2

# Cooke v. Frank Brunckhorst Co., LLC

United States District Court for the Eastern District of New York

March 22, 2024, Decided; March 22, 2024, Filed

23-CV-6333

**Reporter**

2024 U.S. Dist. LEXIS 51644 *; __ F.Supp.3d __; 2024 WL 1230231

DENIS COOKE, on behalf of himself and all others similarly situated, Plaintiff, -against- FRANK BRUNCKHORST CO., LLC, Defendant.

**Counsel:  [*1]** For Denis Cooke, Plaintiff: David C. Wims, Law Office of David Wims, Brooklyn, NY.

For Frank Brunckhorst Co., LLC, Defendant: Alexander Wilde Leonard, Gina Elyse Nicotera, Golenbock Eiseman Assor Bell & Peskoe LLP, New York, NY.

**Judges:** JOSEPH A. MARUTOLLO, United States Magistrate Judge.

**Opinion by:** JOSEPH A. MARUTOLLO

## Opinion

**MEMORANDUM AND ORDER**

**JOSEPH A. MARUTOLLO, United States Magistrate Judge:**

Plaintiff Denis Cooke, a former Systems Support Specialist for a Boar's Head distribution facility in Brooklyn, brings this action against his former employer, Defendant Frank Brunckhorst Co., LLC, on behalf of himself and all other persons similarly situated. *See generally*, Complaint ("Compl."), Dkt. No. 1. Plaintiff alleges that Defendant unlawfully terminated him because of his disability in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112; New York State Human Rights Law ("NYSHRL"), New York Executive Law § 296; and New York City Human Rights Law ("NYCHRL"), New York City Admin. Code §8-107. *Id.* Plaintiff also alleges that Defendant failed to remit to Plaintiff and all others similarly situated timely and complete minimum wage and overtime payments for work performed in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 206 *et seq.* and New York Labor Law ("NYLL") §§ 652 *et seq.* and §§191 *et seq. Id.*

Currently pending before this Court is Plaintiff's motion[1] seeking, pursuant to 29 U.S.C. § 216(b), (1) conditional certification as an FLSA collective action; (2) court-authorized notice; (3) expedited discovery; **[*2]** and (4) a grant of equitable tolling. *See generally* Dkt. Nos. 18-21.

For the reasons stated below, Plaintiff's motion to conditionally certify a collective class is **GRANTED in part** and **DENIED in part**.

**I. Background**

The Complaint, exhibits, and declarations filed by Plaintiff establish the following relevant facts, which are taken as true only for the purposes of this motion. Dkt. Nos. 1, 18-24. *See Jun Hua Yang v. Rainbow Nails Salon IV Inc.*, No. 18-CV-4970 (DLI) (SJB), 2019 U.S. Dist. LEXIS 83194, 2019 WL 2166686, at *3 (E.D.N.Y. May 16, 2019).

Plaintiff, a Brooklyn resident, was employed full-time as a Service Support Specialist for Defendant—a New York domestic liability company with a principal place of business in Florida that is in the business of providing delicatessen products in the New York City metropolitan area. *See* Compl., at ¶¶ 3, 14, 16, 18. Plaintiff began working for Defendant on or about August 2010. *Id.* at ¶ 18; *see* Dkt. No. 20-2, at 2. Plaintiff worked "as an at-will employee who worked as a full-time Systems Support Specialist for Boar's Head at the 24 Rock Street, Brooklyn, New York distribution facility." Dkt. No. 20-2, at 2. As part of his responsibilities, Plaintiff handled "customer service, general labor, building maintenance and repair, [] cleaning and material moving, heavy and light cleaning, and material **[*3]** moving," among other tasks. Compl., at ¶ 19. Plaintiff states in his affidavit that his job as a Systems Support Specialist "required a great deal of manual labor and physical exertion,

---

[1] The docketed motion is styled as "First Motion to Certify FLSA Collective Action."

Case 1:23-cv-08286-AS   Document 39-2   Filed 04/05/24   Page 3 of 14

Page 2 of 13
2024 U.S. Dist. LEXIS 51644, *3

including but not limited to walking, standing, cleaning, handling, and carrying files, papers, equipment, tools, materials, and supplies." Dkt. No. 20. Plaintiff claims that over half his work time was spent on these and other physical tasks. *Id.*

Unfortunately, while employed by Defendant, Plaintiff suffered a stroke requiring him to take a leave of absence beginning on June 24, 2018. Compl., at ¶ 22. Plaintiff alleges that as a result of the stroke and the treatment thereof, his ability to do certain physical tasks was hindered, including his "inability to go up and down stairs, inability to drive, availability to work only during daylight hours due to the need to (safely) use public transportation with these limitations, inability to work in confined spaces, inability to lift or carry more than 10 pounds, inability to climb ladders, impaired grip and dominant hand mobility, and impaired [his] leg coordination." *Id.* at ¶ 23. Plaintiff admits that Defendant provided "a series of accommodations" following **[*4]** consultation with Plaintiff's medical providers—which included, among other accommodations, the ability to work remotely, a modified schedule (to ensure daytime hours), and a modified physical work space. *Id.* at ¶ 24.

On or about August 2020 (or approximately two years following the stroke diagnosis), Plaintiff returned to a full-time, 8-hour per day schedule—though a number of the accommodations remained unchanged. *Id.* at ¶ 26. After Plaintiff requested an updated ADA Accommodation Form from Defendant on or about February 11, 2021, he alleges that Defendant "determined unilaterally, and without a change in circumstances, that it could no longer provide any accommodation that would allow [Plaintiff] to perform the essential functions of his job." *Id.* at ¶¶ 27-28.

On or about March 3, 2021, Defendant notified Plaintiff that it "could no longer meet the worksite accommodations requested by [his] doctor." *Id.* at ¶ 29. Defendant then terminated Plaintiff's employment, effective July 2, 2021. *Id.* at ¶ 30; Dkt. No. 20-2 at 2. Plaintiff alleges that he was discriminated against based on his disability or physical condition and was not offered the opportunity to obtain any other accommodations **[*5]** to remain in his position. Compl., at ¶¶ 31-35.

In addition to his discrimination claims, Plaintiff also alleges that Defendant failed to remit timely payments to Plaintiff and other similarly situated employees. Specifically, Plaintiff alleges that Defendant—throughout the course of Plaintiff's employment—paid Plaintiff "bi-weekly, and approximately five (5) days after the end of the second workweek in each bi-weekly pay period." *Id.* at ¶ 40. This payment program allegedly contravenes the FLSA's prompt payment provisions as to minimum wage and overtime wages. *Id.* at ¶ 41; *see id.* at ¶ 49 ("Defendant is liable under the FLSA for failing to properly and promptly pay the minimum wage and overtime wages for all hours worked greater than forty (40) per week. As such, notice should be sent to the FLSA Collective."). As discussed further in Part III below, Plaintiff identifies other hourly employees who, like Plaintiff, were allegedly denied prompt payment of both minimum wage and overtime compensation during the same time periods, as well as purported documentary evidence in the form of Plaintiff's paystubs and Defendant's admissions. *See* Dkt. No. 19.

Plaintiff seeks conditional certification **[*6]** of a collective class of "all former and current hourly workers of Defendant at any point in time between September 1, 2020 and the present." Dkt. No. 21-5. As part of his motion, Plaintiff filed a Proposed Notice and a Proposed Consent to Join Form. Dkt. Nos. 21-3, 21-4. Plaintiff also seeks expedited discovery and requests that the Court order Defendant to produce "the names, last known addresses, telephone numbers, email addresses, and dates of employment of all non-exempt employees employed by Defendant for a period of three years prior to the filing of the Complaint, in a computer-readable format." Plaintiff's Mem. of Law in Supp. of Mot. for Conditional Cert. ("Plaintiff's Brief"), Dkt. No. 19, at 19. Finally, Plaintiff seeks a grant of equitable tolling to "protect the rights of the FLSA collective." *Id.* at 20.

In opposition, Defendant argues four points: (1) conditional certification is not appropriate in this case; (2) Plaintiff is not similarly situated with the purported collective; (3) Plaintiff's Proposed Notice is improper; and (4) equitable tolling is not warranted. *See* Defendant's Mem. of Law in Opp. to the Mot. for Conditional Cert. ("Defendant's Brief"), Dkt No. 22. **[*7]**

## II. Legal Standard

The FLSA was enacted to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." *Carabajo v. APCO Insulation Co.*, No. 22-CV-4175 (PKC) (SJB), 2023 U.S. Dist. LEXIS 100894, 2023 WL 3931618, at *3 (E.D.N.Y. June 9, 2023) (quoting 29 U.S.C. § 202(a)). The statute requires employers to pay employees an overtime rate

for time worked more than 40 hours in a given work week of "not less than one and one-half times the regular rate at which [they are] employed." *Id.* § 207. Section 216(b) of the FLSA provides a private right of action to an employee to recover overtime compensation from an employer who violates the Act's provisions. *Carabajo*, 2023 U.S. Dist. LEXIS 100894, 2023 WL 3931618, at *3.

Under the FLSA, plaintiffs may proceed "for and on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). This is known as a "collective action." *See Myers v. Hertz Corp.*, 624 F.3d 537, 543 (2d Cir. 2010). "A collective action under the FLSA differs from the typical class action under Rule 23 because a party seeking conditional certification of a collective action need not demonstrate the Rule 23 requirements of numerosity, commonality, typicality, and adequacy of representation." *Aleman-Valdivia v. Top Dog Plumbing & Heating Corp.*, No. 20-CV-421 (LDH) (MMH), 2021 U.S. Dist. LEXIS 189132, 2021 WL 4502479, at *2 (E.D.N.Y. Sept. 30, 2021) (internal citations omitted). Additionally, unlike under a Fed. R. Civ. P. 23 class, members of a FLSA collective action must affirmatively "opt in" to the action. *See Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 74, 133 S. Ct. 1523, 185 L. Ed. 2d 636 (2013) ("Under the FLSA[,] 'conditional certification' [*8] does not produce a class with an independent legal status, or join additional parties to the action. The sole consequence of conditional certification is the sending of court-approved written notice to employees . . .") (internal citations omitted); *Carabajo*, 2023 U.S. Dist. LEXIS 100894, 2023 WL 3931618, at *3 (explaining that in a collective action, to join the suit, a person must "give[ ] [their] consent in writing to become such a party" and file that consent "in the court in which such action is brought." ).

Courts in the Second Circuit apply a two-step test to determine whether to approve a "collective action" under the FLSA. *See Myers v. Hertz Corp.*, 624 F.3d 537, 554-55 (2d Cir. 2010). The first step involves "an initial determination to send notice to potential opt-in plaintiffs who may be similarly situated to the named plaintiffs with respect to whether a FLSA violation has occurred." *Myers*, 624 F.3d at 555.

The first step, generally termed as "conditional certification,"[2] which is at issue here, "generally takes place before any significant discovery"; certification imposes merely a "minimal burden" on the plaintiff and is satisfied by a showing that the purported class members are "similarly situated." *Puglisi v. TD Bank, N.A.*, 998 F. Supp. 2d 95, 99 (E.D.N.Y. 2014) (Brown, J.). The analysis requires a "modest factual showing that they and potential opt-in plaintiffs together [*9] were victims of a common policy or plan that violated the law." *Myers*, 624 F.3d at 555 (internal quotation marks omitted). If the Court grants conditional certification to proceed as a collective action, putative collective action members may "opt in" to the action. *Rafter v. Everlast Sign & Serv.*, No. 21-CV-4588 (NRM) (LGD), 2023 U.S. Dist. LEXIS 65354, 2023 WL 7687261, at *4 (E.D.N.Y. Apr. 13, 2023).

"The second step of the collective action inquiry typically follows the completion of discovery and requires the court to examine the evidentiary record to determine whether the opt-in plaintiffs are, in fact, similarly situated." *Aleman-Valdivia*, 2021 U.S. Dist. LEXIS 189132, 2021 WL 4502479, at *2 (citing *Bifulco v. Mortg. Zone, Inc.*, 262 F.R.D. 209, 212 (E.D.N.Y. 2009)); *see also Myers*, 624 F.3d at 555 (explaining that the second step involves an evaluation "on a fuller record . . . whether a so-called collective action may go forward by determining whether the plaintiffs who have opted in are in fact similarly situated to the named plaintiffs."). If the court determines that the opt-in plaintiffs are not in fact similarly situated, the class is decertified, and the opt-in plaintiffs' claims are dismissed without prejudice. *Aleman-Valdivia*, 2021 U.S. Dist. LEXIS 189132, 2021 WL 4502479, at *2 (citations omitted).

"In considering the first step, Plaintiffs must make 'a modest factual showing that they and potential opt-in plaintiffs together were victims of a common policy or

---

[2] As the Second Circuit noted in *Myers*, "while courts speak of 'certifying' a FLSA collective action, it is important to stress that the 'certification' we refer to here is only the district court's exercise of the discretionary power, upheld in [*Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989)], to facilitate the sending of notice to potential class members. Section 216(b) does not by its terms require any such device, and nothing in the text of the statute prevents plaintiffs from opting in to the action by filing consents with the district court, even when the notice described in *Hoffmann-La Roche* has not been sent, so long as such plaintiffs are 'similarly situated' to the named individual plaintiff who brought the action." *Myers*, 624 F.3d at 555. "Thus 'certification' is neither necessary nor sufficient for the existence of a representative action under FLSA, but may be a useful 'case management' tool for district courts to employ in 'appropriate cases.'" *Id.* (citing *Hoffmann-La Roche*, 493 U.S. at 169, 174).

plan that violated the law.'" *Hunter v. Next Level Burger Co.*, No. 23-CV-03483 (HG), 2024 U.S. Dist. LEXIS 28814, 2024 WL 686929, at *2 (E.D.N.Y. Feb. 20, 2024) (quoting *Myers*, 624 F.3d at 555). A plaintiff is "not required to show **[*10]** an actual FLSA violation at this stage, but rather only that a factual nexus exists between the plaintiff's situation and the situation of other potential plaintiffs." *Calderon v. King Umberto, Inc.*, 892 F. Supp. 2d 456, 459 (E.D.N.Y. 2012) (internal quotation marks omitted). "In making this showing, nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan is required." *Zaldivar v. JMJ Caterers, Inc.*, 166 F. Supp. 3d 310, 317 (E.D.N.Y. 2016) (internal citations omitted). Documents that may be considered to establish such a showing include "plaintiffs' own pleadings, affidavits, declarations, or the affidavits and declarations of other potential class members." *Chicas v. Kelco Constr., Inc.*, No. 21-CV-09014 (PAE) (SDA), 2023 U.S. Dist. LEXIS 27876, 2023 WL 2072026, at *2-3 (S.D.N.Y. Feb. 19, 2023).

"When applying this lenient evidentiary standard, a court evaluates pleadings and affidavits, but does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Singh v. Anmol Food Mart, Inc.*, No. 22-CV-5475 (RER) (JAM), 2024 U.S. Dist. LEXIS 14475, 2024 WL 30241, at *2 (E.D.N.Y. Jan. 26, 2024); *see also Lynch v. U.S. Auto. Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007) ("At this procedural stage, the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations. Indeed, a court should not weigh the merits of the underlying claims in determining whether potential opt-in plaintiffs may be similarly situated."). "[T]he focus of the inquiry is not on whether **[*11]** there has been an actual violation of law but rather on whether the proposed plaintiffs are similarly situated . . . with respect to their allegations that the law has been violated." *Romero v. La Revise Assocs., LLC*, 968 F. Supp. 2d 639, 645 (S.D.N.Y. 2013). In determining whether members of an action are similarly situated, "district courts typically review several factors, including (1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations." *McGlone v. Contract Callers, Inc.*, 49 F. Supp. 3d 364, 367 (S.D.N.Y. 2014) (citation omitted).

### III. Discussion

### A. Conditional FLSA Collective Certification is Warranted

Plaintiff has met his minimal burden of showing that the potential opt-in class members are similarly situated for the purposes of conditional certification. *Jenkins v. TJX Companies Inc.*, 853 F. Supp. 2d 317, 320 (E.D.N.Y. 2012).

At the first step of the collective action process, "courts have held that plaintiffs can meet this burden by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997) (Sotomayor, J.) ("[T]he purpose of this first stage is merely to determine whether 'similarly situated' plaintiffs do in fact exist."). **[*12]** Key to this showing is whether Plaintiff "provide[s] actual evidence of a factual nexus between their situation and those that they claim are similarly situated rather than mere conclusory allegations." *Carabajo*, 2023 U.S. Dist. LEXIS 100894, 2023 WL 3931618, at *3 (quoting *Qing Gu v. T.C. Chikurin, Inc.*, No. 13-CV-2322, 2014 U.S. Dist. LEXIS 53813, 2014 WL 1515877, at *3 (E.D.N.Y. Apr. 17, 2014)). At the conditional certification stage, "the burden is so low that even one or two affidavits establishing the common plan may suffice." *Jeong Woo Kim v. 511 E. 5th St., LLC*, 985 F. Supp. 2d 439, 445-46 (S.D.N.Y. 2013).

Here, Plaintiff has made a sufficient showing here for conditional certification. Plaintiff seeks conditional certification of a collective of "all former and current hourly workers of Defendant at any point in time between September 1, 2020 and the present." Dkt. No. 21-5. Plaintiff seeks to certify a collective under the FLSA's "prompt payment requirement," alleging non-prompt payment of minimum wages and overtime for at least the first week in each bi-weekly pay period, thereby violating the FLSA. *See* Dkt. No. 24 (citing *Rogers v. City of Troy, N.Y.*, 148 F.3d 52, 55 (2d Cir. 1998) (citing *United States v. Klinghoffer Bros. Realty Corp.*, 285 F.2d 487, 491 (2d Cir. 1960) ("While the FLSA does not expressly set forth a requirement of prompt payment, such a requirement is clearly established by the authorities . . .").

Plaintiff alleges that he was a "manual worker" for Defendant in New York City, and therefore, under New York Labor Law § 191(1)(a), he was required to be paid on a weekly basis. *See* Dkt. **[*13]** No. 19; *Caul v. Petco*

*Animal Supplies, Inc.*, No. 20-CV-3534 (RPK) (SJB), 2021 U.S. Dist. LEXIS 184652, 2021 WL 4407856, at *2 (E.D.N.Y. Sept. 27, 2021) ("Section 191(1)(a) states that '[a] manual worker shall be paid weekly and not later than seven calendar days after the end of the week in which the wages are earned' unless the Commissioner of the New York Department of Labor has 'authorized' the employer to pay the worker less frequently.'") (citing New York Labor Law § 191(1)(a)). "Section 191 permits a manual worker to bring a civil action for delayed payment of wages—even if the wages have subsequently been paid." *Caul*, 2021 U.S. Dist. LEXIS 184652, 2021 WL 4407856, at *2.[3]

---

[3] As the Court in *Caul* explains,

> When deciding a question of state law like this one, a federal court "look[s] to the state's decisional law, as well as to its constitution and statutes." *Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 497 (2d Cir. 2020) (citation omitted). Absent a clear directive from a state's highest court, a federal court must "predict how the state's highest court would resolve the uncertainty or ambiguity." *Id.* at 499 (citation omitted). In doing so, the federal court "is bound to apply the law as interpreted by a state's intermediate appellate courts unless there is persuasive evidence that the state's highest court would reach a different conclusion." *V.S. v. Muhammad*, 595 F.3d 426, 432 (2d Cir. 2010).
>
> Here, a state intermediate court—the Appellate Division's First Department—has held that New York Labor Law permits employees to seek liquidated damages for the untimely payment of wages, even [*14] if wages are no longer past due. *Vega v. CM & Assocs. Constr. Mgmt.*, LLC, 175 A.D.3d 1144, 107 N.Y.S.3d 286 (N.Y. App. Div. 2019). The First Department reasoned that "[Section] 198(1-a) expressly provides a private right of action for a violation of [Section] 191." *Id.* at 1146. It further concluded that Section 198(1-a) allows an award of damages based on untimely payments even if the employer had "pa[id] the wages that [we]re due before the commencement of [the] action." *Id.* at 1145. The court reasoned that an "underpayment" for purposes of Section 198(1-a) occurs "[t]he moment that an employer fail[s] to pay wages in compliance with [S]ection 191(1)(a)." *Ibid.* While an employer who eventually pays the underpaid wages can "assert an affirmative defense" based on the eventual payment, the First Department concluded that an employee could still seek "statutory remedies," including liquidated damages. *Ibid.* The appellate court found instructive the Supreme Court's conclusion in *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707, 65 S. Ct. 895, 89 L. Ed. 1296 (1945). That Supreme Court decision interpreted a similarly worded provision in the

In support of his assertion [*15] that he was a manual worker, Plaintiff explains in his affidavit that his job as a Systems Support Specialist "required a great deal of manual labor and physical exertion, including but not limited to walking, standing, cleaning, handling, and carrying files, papers, equipment, tools, materials, and supplies." Dkt. No. 20. Plaintiff claims that over half his work time was spent on these and other physical tasks. *Id.*

Plaintiff also identifies two other hourly employees of Defendant—Brian Cruz and Alex Nagimov—whom Plaintiff claims also have been denied prompt payment of both minimum wage and overtime compensation during the same time period at issue. *See* Affidavit of Denis Cooke, Dkt. No. 20 ("Cooke Aff.") at ¶¶ 3-9; *see* Compl. ¶¶ 3-5, 40-43. Plaintiff claims that Mr. Cruz and Mr. Nagimov "had the same post of duty as [Plaintiff], same job title, performed the same job tasks, and worked similar hours also at Defendant's direction and control." Cooke Aff. ¶ 8. Plaintiff claims that Mr. Cruz and Mr. Nagimov were also paid by Defendant bi-weekly; Plaintiff alleges to have confirmed this information via observing some of their timesheets and paystubs. *Id.* ¶ 9.

Plaintiff also points to "documentary [*16] evidence in the form of Plaintiff's paystubs and Defendant's admissions" to support his allegations that members of the putative collective are similarly situated. Dkt. No. 19. Plaintiff points to a letter from Defendant to the Equal Employment Opportunity Commission ("EEOC"), dated July 22, 2024, in which they note that Plaintiff and other similar employees were, *inter alia*, "required to work

---

> [FLSA] to allow an employee to recover liquidated damages "regardless of whether an employee has been paid wages owed before the commencement of the action." *Vega*, 175 A.D.3d. at 1145-46.
>
> Since *Vega*, every court in this Circuit to consider that decision appears to have followed its construction of the New York Labor Law, *see, e.g., Mabe v. Wal-Mart Assocs. Inc.*, No. 1:20-cv-00591, 2021 U.S. Dist. LEXIS 50954, 2021 WL 1062566, at *5 (N.D.N.Y. Mar. 18, 2021); *Sorto v. Diversified Maint. Sys. LLC*, No. 20-CV-1302(JS)(SIL), 2020 U.S. Dist. LEXIS 242856, 2020 WL 7693108, at *2-3 (E.D.N.Y. Dec. 28, 2020); *Duverny v. Hercules Med. P.C.*, No. 18-CV-07652 (DLC), 2020 U.S. Dist. LEXIS 37547, 2020 WL 1033048, at *5-6 (S.D.N.Y. Mar. 3, 2020); *Scott v. Whole Foods Mkt. Grp., Inc.*, No. 18-CV-0086 (SJF) (AKT), 2020 U.S. Dist. LEXIS 255455, 2020 WL 9814095, at *3 (E.D.N.Y. Feb. 5, 2020).

*Caul*, 2021 U.S. Dist. LEXIS 184652, 2021 WL 4407856, at *2.

varying hours, including overnight shifts and weekends as needed"; and "travel as necessary for training and on-site systems." Dkt. No. 20-2 at 2-3; *see* Dkt. No. 20-3 (showing Plaintiff's paystubs). In the same letter, Plaintiff highlights the work requirements of Plaintiff's position, which includes installing various computer networks and systems. Dkt. No. 20-2.

At bottom, Plaintiff states in his affidavit that "[d]uring the entirety of [his] tenure in Defendant's employ, Defendant paid [Plaintiff] on an hourly basis, paid [his] wages bi-weekly and five (5) days after the end of the second week in each pay period; and on information and belief, paid many of its other similar workers with the same frequency." Dkt. No. 20.

Plaintiff has therefore established—at least for purposes of this motion—that **[\*17]** while employed by Defendant, he and other similarly situated employees were subject to a policy that ran afoul of the FLSA: the practice of failing to remit prompt and timely payment as required by the FLSA's prompt payment provision. Plaintiff's affidavit establishes a "factual nexus" between his claims and those of other employees under the lenient certification standard. *Santiago v. Cuisine by Claudette, LLC*, No. 23-CV-2675 (OEM) (JAM), 2023 U.S. Dist. LEXIS 206817, 2023 WL 8003323, at \*3 (E.D.N.Y. Nov. 17, 2023) (quoting *Jibowu v. Target Corp.*, 492 F. Supp. 3d 87, 122 (E.D.N.Y. 2020)).

Defendant raises a number of objections to the proposed certification. As an initial matter, Defendant argues that Plaintiff's claims are not subject to collective treatment under the FLSA because Plaintiff has not shown "Defendant violated the FLSA's prompt payment requirement solely by virtue of its implementation of a lawful biweekly payroll schedule." *See* Defendant's Opp., at 9.[4] In response, Plaintiff argues that "[t]o be clear, if Plaintiff was a 'manual worker,' Defendant was required to pay weekly under Labor Law § 191 and its failure to do so promptly after each week operates as both failure to pay promptly under the FLSA and NYLL, and as a deduction to wages under Labor Law § 193, which is also pleaded in the case at bar." Dkt. No. 24, at 4-5. But, as Plaintiff correctly points out, whether any prompt payment requirement **[\*18]** was violated is a merit-based determination not ripe for adjudication at this stage. Plaintiff's Reply in Supp. of Mot. for Conditional Cert., Dkt. No. 24, at 3-4. The only issue here is whether conditional certification is warranted. *Id.* Indeed, Defendant cites to cases involving motions to dismiss or motions for summary judgment, rather than motions for conditional certification. *See, e.g.*, Defendant's Opp., at 7-8 (citing *Conzo v. City of New York*, 667 F. Supp. 2d 279, 288-89 (S.D.N.Y. 2009) and *Sarit v. Westside Tomato, Inc.*, No. 18-CV-11524 (RA), 2020 U.S. Dist. LEXIS 67074, 2020 WL 1891983, at \*5-6 (S.D.N.Y. Apr. 16, 2020)).

Additionally, Defendant asserts that "the roles occupied by employees at [Defendant's] Brooklyn Facility vary greatly among the different departments." Defendant's Opp., at 17. Specifically, Defendant argues that "[t]here are at least a dozen broad categories of employee working at the Brooklyn Facility . . ." *Id.* As the department were "comprised of both union and non-union employees, hourly non-exempt employees, and salaried exempt employees," Defendant asserts that Plaintiff's role as a "non-union, hourly IT person" is an "exceedingly narrow subset of the positions available at the Brooklyn Facility." *Id.* at 18.

But this argument is unavailing. "[P]otential members of a proposed collective need not be identical in every respect so long as all are similarly **[\*19]** subject to the same unlawful policy or practice." *Zimnicki v. Krysiak Constr. Corp.*, No. 21-CV-04634 (RPK) (JRC), 2022 U.S. Dist. LEXIS 230935, 2022 WL 17820139, at \*8 (E.D.N.Y. Sept. 27, 2022) (citing *Taveras v. D & J Real Est. Mgmt. II, LLC*, 324 F.R.D. 39, 41 (S.D.N.Y. 2018)). Indeed, "different job titles may be included within a conditional collective if there is evidence that plaintiffs may be similarly situated as to a common policy to violate the FLSA." *Taveras*, 324 F.R.D. at 41. "Courts in this district and elsewhere routinely reject attempts to limit certification based on job function." *Mendoza v. Little Luke, Inc.*, No. 14-CV-3416 (JS) (AYS), 2015 U.S. Dist. LEXIS 138280, 2015 WL 5918580, at \*3 (E.D.N.Y. Oct. 9, 2015) (collecting cases). As noted above, the focus at the initial certification stage "is on the issue of whether the Plaintiffs were the victims of a common policy or plan which violated the law—and less so on whether the Plaintiffs performed identical job functions." *Cohan v. Columbia Sussex Mgmt., LLC*, No. 12-CV-3203 (JS) (AKT), 2013 U.S. Dist. LEXIS 187539, 2013 WL 8367807, at \*4 (E.D.N.Y. Sept. 19, 2013) (granting conditional certification where the plaintiffs "submitted evidence which suggests that the allegedly improper overtime policy was not limited to banquet servers, but rather was applied to all service employees"); *see also Rosario v. Valentine Ave. Disc. Store, Co.*, Inc., 828 F. Supp. 2d 508, 517 (E.D.N.Y. 2011) ("It is not necessary for the purposes of conditional certification that the prospective class members all performed the same

---

[4] Citations are to the ECF-numbered pages.

duties, or worked during the same time periods, or worked at the same locations as the named plaintiffs."). Accordingly, "[i]n the Second Circuit, courts routinely find employees similarly situated 'despite not occupying **[*20]** the same positions or performing the same job functions and in the same locations, provided that they are subject to a common unlawful policy or practice.'" *Guaman v. 5 "M" Corp.*, No. 13-CV-3820 (LGS), 2013 U.S. Dist. LEXIS 152379, 2013 WL 5745905, at *4 (S.D.N.Y. Oct. 23, 2013) (quoting *Summa v. Hofstra Univ.*, 715 F. Supp. 2d 378, 390 (E.D.N.Y. 2010)).

Additionally, to the extent that Defendant seeks to point to union membership as a distinguishing factor, other courts have agreed to certify both union and non-union employees upon a finding that the employees were nonetheless subject to the same unlawful policy. *See e.g., Maldonado v. Arcadia Bus. Corp.*, No. 14-CV-4129 (DLI) (RML), 2015 U.S. Dist. LEXIS 54523, 2015 WL 1914933, at *2 (E.D.N.Y. Apr. 27, 2015) (granting conditional certification "where both union and non-union employees were 'improperly paid in cash by [Academic] . . . [and] [a]s with the nonunion employees, many of the union employees were not paid overtime.'") (quotations in original). Notwithstanding Defendant's arguments about specific job functions, work sites, and employee positions, the Court finds that Plaintiff has made a modest factual showing that he and the potential collective action members are victims of a common compensation practice that violates the FLSA, and thus are similarly situated.

Defendant also takes issue with Plaintiff's failure to "provide any detail regarding the conversations he had with [Mr. Cruz and Mr. Nagimov], such as the positions of these co-workers, **[*21]** the dates of these conversations, or any details surrounding the conversations." Defendant's Opp., at 14. Plaintiff, however, is not required to specifically state that a detailed conversation took place between specific employees in order to meet his burden. *See Hunter*, 2024 U.S. Dist. LEXIS 28814, 2024 WL 686929, at *2 (finding that a plaintiff's supported and corroborated observations were sufficient at the first state of conditional certification)*; see also Diaz v. Weinstein Landscaping*, No. 19-CV-06050 (JMA) (ST), 2022 U.S. Dist. LEXIS 35813, 2022 WL 801493, at *3 (E.D.N.Y. Feb. 28, 2022), *report and recommendation adopted*, 2022 U.S. Dist. LEXIS 46730, 2022 WL 801322 (E.D.N.Y. Mar. 16, 2022) ("[By] providing names of co-workers through Defendant Weinstein's testimony, Diaz has offered facts that push the allegations beyond conclusory, which would allow the Court to test those assertions and would give Defendants the ability to contest them."); *cf. Shibetti v. Z Rest., Diner & Lounge, Inc.*, 18-CV-856 (ERK) (ST), 2019 U.S. Dist. LEXIS 150715, 2019 WL 11623937 at 3-4 (E.D.N.Y. Sept. 3, 2019) (denying certification because plaintiff but did not "provide any names, dates, or circumstances to give a factual basis for their statements). As noted above, Plaintiff affirms that these former co-workers "had the same post of duty as [Plaintiff], same job title, performed the same job tasks and worked similar hours also at Defendant's direction and control." Cooke Aff. ¶ 8.

To conditionally certify a collective action, "the burden is so low that even one or two affidavits establishing **[*22]** the common plan may suffice." *Kim v. 511 E. 5th St., LLC*, 985 F. Supp. 2d 439, 445-46 (S.D.N.Y. 2013). This is true even when the declarations are "somewhat thin on details." *Lubas v. JLS Grp., Inc.*, No. 18-CV-6611 (KAM) (SJB), 2020 U.S. Dist. LEXIS 130233, 2020 WL 4210754, at *7 (E.D.N.Y. July 22, 2020) ("such proof is sufficient to meet the low factual threshold for FLSA collective certification"); *see also Placinta v. Grazina Pilka, Inc.*, No. 16-CV-4272 (KAM)(SJB), 2018 U.S. Dist. LEXIS 179222, 2018 WL 5024170, at *9, *14 (E.D.N.Y. Oct. 5, 2018) (granting motion for conditional certification where there were multiple affidavits corroborating plaintiffs' statements even though the factual record proffered was "ultimately quite thin on facts"). Courts in this Circuit have conditionally certified FLSA collectives based only on a plaintiff's detailed affidavit about his working conditions and those of his colleagues. *Miranda v. Gen. Auto Body Works, Inc.*, No. 17-CV-4116 (AMD) (RER), 2017 U.S. Dist. LEXIS 172563, 2017 WL 4712218, at *2 (E.D.N.Y. Oct. 18, 2017) ("[T]here are numerous examples of courts in this Circuit granting conditional certification based on the pleadings and a single affidavit by the plaintiff."); *Hernandez v. Bare Burger Dio Inc.*, No. 12-CV-7794 (RWS), 2013 U.S. Dist. LEXIS 89254, 2013 WL 3199292, at *3 (S.D.N.Y. June 25, 2013) ("[C]ourts in this circuit have routinely granted conditional collective certification based solely on the personal observations of one plaintiff's affidavit.") (collecting cases); *see also Yi Mei Ke v. JR Sushi 2 Inc.*, No. 19-CV-7332 (PAE) (BCM), 2021 U.S. Dist. LEXIS 8045, 2021 WL 148751, at *8 (S.D.N.Y. Jan. 15, 2021) (certifying collective based on plaintiff's two affidavits that "adequately described conversations with other employees of JR Sushi concerning their wages"), *aff'd*, 2021 U.S. Dist. LEXIS 24554, 2021 WL 465359, at *3 (Feb. 9, 2021).

Finally, Defendant's remaining argument invites the

Court to determine whether an individual **[*23]** employee is a manual worker within the meaning of the NYLL as "Plaintiff's FLSA claim arises out of his contention that he was a manual worker within the meaning of the NYLL." Defendant's Opp., at 21-22. The Court declines to do so at this time, as, again, this determination is an issue on the merits not ripe for adjudication at the conditional certification stage of this litigation. *See Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 322 (S.D.N.Y. 2007) (collecting cases explaining that district courts must not resolve factual disputes or resolve issues that go to the merits of plaintiffs' claims at the conditional certification stage); *Martinez v. Zero Otto Nove, Inc.*, No. 15-CV-899 (ER), 2016 U.S. Dist. LEXIS 82232, 2016 WL 3554992, at *4 n.3 (S.D.N.Y. June 23, 2016) (noting that defendants' efforts to "challeng[e] the factual accuracy of Plaintiffs' allegations" were "futile" at conditional certification stage); *Zhao v. Benihana, Inc.*, No. 01-CV-1297 (KMW), 2001 U.S. Dist. LEXIS 10678, 2001 WL 845000, at *2 (S.D.N.Y. May 7, 2001) (noting that court "need not evaluate the merits of plaintiff's claims" in deciding whether to grant conditional certification).

Therefore, the Court finds that Plaintiff has met his burden to demonstrate that putative collective action members are similarly situated and orders the conditional certification of the collective FLSA action.

### B. The Proposed Notice and Notice Period

Plaintiff requests that this Court authorize him to mail a Notice, Consent to Join Form, and **[*24]** a postage pre-paid return envelope (together, the "Notice Package") to "all former and current hourly workers of Defendant at any point in time between September 1, 2020 and the present." Dkt. No. 21-5. Plaintiff also requests this Court compel Defendant to post the Notice at its New York workplace(s). *Id.* Plaintiff finally requests the Court's permission to send the Notice Package to the potential opt-in class members via text message. Plaintiff's request is granted.

Although § 216(b) does not "expressly provide for court-authorized notice to potential opt-in plaintiffs in a collective action, 'it is well settled' that district courts have the power to authorize an FLSA plaintiff to send such notice." *Damassia v. Duane Reade, Inc.*, No. 04-CV-8819 (GEL), 2006 U.S. Dist. LEXIS 73090, 2006 WL 2853971, at *2 (S.D.N.Y. Oct. 5, 2006) (quoting *Hoffmann*, 982 F. Supp. at 260). The FLSA, however, does not contain a certification requirement; "[o]rders authorizing notice are often referred to as order 'certifying' a collective class." *Id.* at 2 (citing *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 197 (S.D.N.Y. 2006)). District "courts maintain discretion to craft appropriate notices that effectuate the overarching policies of the collective suit provisions and provide employees with accurate and timely notice concerning the pendency of the action, so that they can make informed decisions about whether to participate." **[*25]** *Hernandez v. Immortal Rise, Inc.*, No. 11-CV-4360 (RRM) (LB), 2012 U.S. Dist. LEXIS 136556, 2012 WL 4369746, at *6 (E.D.N.Y. 2012) (internal quotation marks omitted) (citing *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 323 (S.D.N.Y. 2007)).

Plaintiff has provided a proposed Notice for the Court's review and endorsement. Dkt. No. 40-2. "Courts have broad discretion to craft appropriate notices that effectuate the overarching policies of the collective suit provisions and provide employees with accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hunter*, 2024 U.S. Dist. LEXIS 28814, 2024 WL 686929, at *3 (quoting *Hernandez v. Immortal Rise, Inc.*, No. 11-CV-4360, 2012 U.S. Dist. LEXIS 136556, 2012 WL 4369746, at *6 (E.D.N.Y. Sept. 24, 2012)).

As a threshold matter, Defendant objects to the proposed Notice as improper. Specifically, Defendant argues that: (1) the relevant time period in this lawsuit "should be two years"; (2) that the language in the proposed notice "must be modified to reflect judicial neutrality," and (3) the Notice should include language advising putative class members that "they may be responsible court costs if the claim is unsuccessful." Defendant's Opp., at 25-26. The Court will address each of Defendant's contentions in turn.

First, the statute of limitations for a FLSA violation is two years, except when the violations are willful, in which case the statute of limitations is extended to three years. 29 U.S.C. § 255(a). Plaintiff alleges willful conduct against **[*26]** Defendant. *See, e.g.*, Compl., at ¶¶ 44, 89, 95, 101. "At the conditional certification stage, allegations of willful conduct are sufficient to apply the three-year statute of limitations for purposes of certifying the class." *Jie Zhang v. Wen Mei, Inc.*, No. 14-CV-1647 (JS) (SIL), 2015 U.S. Dist. LEXIS 144527, 2015 WL 6442545, at *5 (E.D.N.Y. Oct. 23, 2015); *see also Patton v. Thomson Corp.*, 364 F. Supp. 2d 263, 268 n. 2 (E.D.N.Y. 2005) (finding allegation of willful violation justified notice based on a three-year statute of

limitations period). "As the Complaint contains allegations of willful conduct by Defendants, the Court finds it appropriate to apply the three-year statute of limitations under the FLSA at this stage of the proceedings." *Valerio v. RNC Indus.*, LLC, 314 F.R.D. 61, 74 (E.D.N.Y. 2016).

Indeed, the Court notes that the recent trend "is to 'approve three-year notice periods to avoid the confusion caused by notifying plaintiffs who potentially have two disparate claims with different statutes of limitations, along with the inefficiency of providing notice to plaintiffs whose claims may well be time-barred.'" *Gurrieri v. Cty. of Nassau*, No. 16-CV-6983 (ADS) (SIL), 2019 U.S. Dist. LEXIS 87146, 2019 WL 2233830, at *8 (E.D.N.Y. May 23, 2019) (quoting *Mongiove v. Nate's Corp.*, No. 15-CV-1024 (NGG) (RML), 2016 U.S. Dist. LEXIS 16878, 2016 WL 590460, at *6 (E.D.N.Y. Feb. 11, 2016)); *McBeth v. Gabrielli Truck Sales, Ltd.*, 768 F. Supp. 2d 396, 400 (E.D.N.Y. 2011) ("[W]hile '[n]otice to all former employees, going back six years, has been authorized where plaintiffs seek relief under both the FLSA and the New York Labor Law,' the growing trend in this district appears to be limiting the notice period to three years." (citations omitted)). As some district courts have **[*27]** noted, "[i]t would be confusing to employees who are ineligible for the FLSA opt-in [collective] to receive the opt-in notice, which does not relate to any state law claims. Further, while a class for the state law claims may someday be certified, it is an opt-out, not an opt-in, class, so there is no danger of claim lapse." *Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 668 (S.D.N.Y. 2013). As to whether a two-year or three-year notice should apply under FLSA, "at the conditional certification stage, a plaintiff need not provide evidence sufficient to establish willfulness in order for the three-year period to be utilized for notification purposes." *Slamna v. API Rest. Corp.*, No. 12-CV-757, 2013 U.S. Dist. LEXIS 93176, 2013 WL 3340290, at *4 (S.D.N.Y. July 2, 2013). "If appropriate, this Court can revisit any statute of limitations questions at a later stage." *Raimundi v. Astellas US LLC*, No. 10-CV-5240, 2011 U.S. Dist. LEXIS 124484, 2011 WL 5117030, at *2 (S.D.N.Y. Oct. 27, 2011). As a result, at this stage, it is appropriate to permit conditional certification for a three-year period. Should Plaintiff fail to demonstrate that Defendant acted willfully, employee claims can be limited. Therefore, the proposed Notice correctly asserts a three-year time frame.

The three-year period, however, shall commence from the date of the filing of the Complaint (August 23, 2023) looking backwards—not the date of this Court's order through the present. *See, e.g., Raimundi*, 2011 U.S. Dist. LEXIS 124484, 2011 WL 5117030, at *2 (granting a notice period from **[*28]** three years prior to the filing of the complaint through the entry of the Court's order granting conditional certification); *Lubas v. JLS Grp., Inc.*, No. 18-CV-6611, 2020 U.S. Dist. LEXIS 130233, 2020 WL 4210754, at *12 (E.D.N.Y. July 22, 2020) (same). In light of the above, the Court finds that the proposed collective should be composed of all former and current hourly workers of Defendant at any point in time between August 23, 2020 and August 23, 2023. Plaintiff is directed to modify all relevant documents in the Notice Package and resubmit a revised proposed Notice for the Court's approval.

Second, Defendant asserts that "the language in the proposed notice is unnecessarily biased and must be modified to reflect judicial neutrality." Defendant's Opp., at 25. Specifically, Defendant argues that, to ensure neutrality, the Notice should be modified to remove "a heading bearing the name of this Court or the caption of this case." *Id.* at 25-26. Defendant cites to a Northern District of California case which noted that "including the full caption may give a false impression of judicial endorsement of Plaintiffs' position where none exists." *Id.* (citing *Prentice v. Fund for Pub. Interest Research, Inc.*, C-06-776SC, 2007 U.S. Dist. LEXIS 71122, 2007 WL 2729187 (N.D. Cal. Sept. 18, 2007). But this Court is not persuaded by the *Prentice* case. Indeed, another district within the Second Circuit has previously declined to follow *Prentice*'s argument on judicial **[*29]** neutrality. *See Boice v. M+W U.S., Inc.*, No. 14-CV-505 (GTS) (CFH), 2016 U.S. Dist. LEXIS 122408, 2016 WL 11476964, at *9 (N.D.N.Y. Sept. 7, 2016) (finding that it is "unlikely that the potential plaintiffs will believe that the Court or its judges endorse plaintiff's position by including the Court's caption on the notice, and, thus, declin[ing] to remove the caption from the proposed notice."). Additionally, the Court notes that any confusion to the potential plaintiffs can be cured by the fact that the Notice plainly states that "[t]his notice is not intended to express any opinion by the Court as to the merits of any claim or defense raised by the parties to the lawsuit." Dkt. No. 21-3, at 1. Therefore, the Court declines to order that the Notice be modified to remove the caption.

Third, Defendant argues that the Notice should include language advising putative class members that "they may be responsible court costs if the claim is unsuccessful." Defendant's Opp., at 25-26. The Court disagrees. Case law supports the addition of language regarding potential plaintiffs' potential liability for costs

only where defendants show an intention to bring counterclaims. *See Fengler v. Crouse Health Sys., Inc.*, 634 F. Supp. 2d 257, 262 (N.D.N.Y. 2009) (finding that it was "clear error" to approve a Notice containing language pertaining to potential liability for costs and damages where defendants **[*30]** had not asserted any counterclaims and had no intention of filing counterclaims); *Guzman v. VLM, Inc.*, 07-CV-1126 (JG) (RER), 2007 U.S. Dist. LEXIS 75817, 2007 WL 2994278, at *8 (E.D.N.Y. Oct. 11, 2007) (finding that it was "inappropriate" to include language notifying potential plaintiffs of responsibility for costs where costs of absent class members would be *de minimis* and defendants failed to show the likelihood of "meaningful" counterclaims). Here, it does not appear that Defendant has raised counterclaims, nor does Defendant argue that they intent do raise them. Thus, the Court finds inclusion of language regarding potential liability for court costs unnecessary.

As to Plaintiff's request to disseminate the Notice Package via text message, this request is granted. *See Santiago*, 2023 U.S. Dist. LEXIS 206817, 2023 WL 8003323, at *6 (citing *Qian Wang v. Kirin Transp. Inc.*, No. 20-C-5410 (KAM) (TAM), 2022 U.S. Dist. LEXIS 3599, 2022 WL 79155, at *15 (E.D.N.Y. Jan. 7, 2022) (finding that dissemination of the notice by mail, email, and text message is appropriate).

As to Plaintiff's request that the Notice be posted Defendant's facilities, this request is granted. "Courts routinely approve requests to post notice on employee bulletin boards and in other common areas, even where potential members will also be notified by mail." *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 449 (S.D.N.Y. 2011) (citations omitted); *Ballast v. Workforce7 Inc.*, No. 20-CV-3812 (ER), 2021 U.S. Dist. LEXIS 242485, 2021 WL 5999202, at *9 (S.D.N.Y. Dec. 20, 2021). Therefore, the Court agrees that posting the notice in a public place at Defendant's facilities is appropriate.

As to Plaintiff's unopposed request **[*31]** for a sixty (60) day opt-in period, this request is also granted. The Court agrees that this is a reasonable period of time, *see Whitehorn*, 767 F. Supp. 2d at 451-52; however, because the dates collective members may receive the notice form by mail are likely to vary, the Court directs the parties to meet and confer as to a schedule for dissemination of notice, including a deadline by which consent forms must be filed.

Accordingly, by March 29, 2024, the parties are to meet and confer in good faith, and by April 1, 2024, the parties shall submit a revised Proposed Notice and consent form that complies with the directives set forth herein;

**C. Expedited Discovery Request**

Plaintiff also requests that the Court require Defendant to produce, within ten (10) days, a computer-readable data file containing the full names, current home address or last known address, cell phone number, work and personal email addresses, social security number, and dates of employment with job titles of the individuals composing the putative class. Dkt. No. 21-5, at 1.

Plaintiff's request is granted in part and denied in part.

"Courts in this District commonly grant requests for the production of names, mailing addresses, email addresses, telephone **[*32]** numbers, and dates of employment in connection with the conditional certification of a FLSA collective action." *Lovelace v. Land Applicance Servs. Inc.*, 18-CV-6892 (DLI) (ST), 2020 U.S. Dist. LEXIS 1532, 2020 WL 8921382, at *7 (E.D.N.Y. Jan. 3, 2020) (quoting *Benavides v. Serenity Spa NY Inc.*, 166 F. Supp. 3d 474, 488 (S.D.N.Y. 2016)), *report and recommendation adopted*, 2020 U.S. Dist. LEXIS 61314, 2020 WL 8921381 (E.D.N.Y. Mar. 31, 2020); *see also Tate v. WJL Equities Corp.*, No. 13-CV-8616, 2014 U.S. Dist. LEXIS 76162, 2014 WL 2504507, at *2 (S.D.N.Y. June 3, 2014) ("Courts in this Circuit have held that disclosure of employee contact information is relevant and appropriate in connection with conditional collective action certification."). Moreover, courts have required that the contact information of potential FLSA collective members be produced in computer-readable formats whenever possible. *See Mei Rong Du v. Dingxiang Inc.*, 19-CV-11924 (JPO) (BCM), 2020 U.S. Dist. LEXIS 237500, 2020 WL 7404984, at *13 (S.D.N.Y. Dec. 17, 2020) (ordering defendants to produce contact information "in [E]xcel, if possible"); *Jacob v. Duane Reade, Inc.*, No. 11-CV-0160 (JPO), 2012 U.S. Dist. LEXIS 11053, 2012 WL 260230, at *10 (S.D.N.Y. Jan. 27, 2012) (granting plaintiffs' request that defendants produce contact information in Microsoft Excel file); *Jackson*, F.R.D. 152, at 170 (ordering the defendant to provide identification information in "electronically readable format."). Therefore, Defendant shall produce a computer-readable data file containing full names, current home addresses or last known addresses, cell phone

numbers, and work and personal email addresses.

Defendant shall also include job titles and dates of employment for the covered employees produced in the data file. Defendant has not indicated that production of the requested information **[*33]** would be either "unduly burdensome [or] disruptive" and the Court sees no reason why this would be the case. *Jacob*, 2012 U.S. Dist. LEXIS 11053, 2012 WL 260230, at *10 (ordering defendants to provide contact information because such information "would be neither unduly burdensome nor disruptive"). Moreover, the Court notes that such production would aid in "facilitat[ing] the speedy collection of data . . . [and] the opt-in process." *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 2010 U.S. Dist. LEXIS 58460, 2010 WL 2362981, at *3 (S.D.N.Y.2010). Therefore, Defendant is directed to produce job titles and dates of employment for the covered employees produced in the computer-readable data file.

The Court, however, declines to compel Defendant to produce social security numbers. Courts are reluctant to authorize disclosure of private information, such as social security numbers, in the first instance and without a showing that the information is necessary for the plaintiff to notify potential opt-ins of the collective action. *See, e.g., Jie Zhang v. Wen Mei, Inc.*, No. 14-CV-1647 (JS) (SIL), 2015 U.S. Dist. LEXIS 144527, 2015 WL 6442545, at *7 (E.D.N.Y. Oct. 23, 2015) (granting the plaintiffs' request for a list of the names, addresses, phone numbers, last known email addresses, work locations, and dates of employment for potential plaintiffs, but declining request for social security numbers because the plaintiffs "have not established a particularized need" for this information); **[*34]** *Velasquez v. Digital Page, Inc.*, No. 11-CV-3892 (LDW) (AKT), 2014 U.S. Dist. LEXIS 68538, 2014 WL 2048425, at *15 (E.D.N.Y. May 19, 2014) (directing the defendants to provide the plaintiffs with a list of the names, addresses, telephone numbers, email addresses, and dates of employment for all potential class members, but not their dates of birth and social security numbers); *Brabham v. Mega Tempering & Glass Corp.*, No. 13-CV-54 (JG), 2013 U.S. Dist. LEXIS 93897, 2013 WL 3357722, at *8 (E.D.N.Y. July 3, 2013) ("The purpose of the production of potential opt-in plaintiffs is to enable Plaintiffs to notify them of the collective action . . . The production of names, addresses, phone numbers and email addresses plainly serves that purpose, while birth dates and Social Security numbers are not necessary for Plaintiffs to perform their notification task.") (internal citation omitted); *Rosario v. Valentine Ave. Disc. Store, Co.*, 828 F. Supp. 2d 508, 522 (E.D.N.Y. 2011) ("In light of the privacy concerns regarding employees' dates of birth and social security numbers, the production of such information is unnecessary at this juncture. If plaintiff is unable to effectuate notice on some potential opt-in plaintiffs with the information that is produced, plaintiff may renew his application for additional information regarding those specific employees."). Therefore, Defendant shall not produce the social security numbers of the putative class members.

Accordingly, by April 15, 2024[5], Defendant shall produce to Plaintiff, in computer readable format, **[*35]** the full names, current home address or last known address, cell phone number, work and personal email addresses, and dates of employment with job titles of all former and current hourly workers of Defendant at any point in time between August 23, 2020 and August 23, 2023.

**D. Equitable Tolling**

Plaintiff moves for equitable tolling of the statute of limitations for the putative FLSA collective from the date he filed the instant motion until the close of any court-ordered opt-in period. Dkt. No. 19, at 20. Plaintiff simply argues that equitable tolling is appropriate because "Plaintiff has acted diligently during the period for which it seeks equitable tolling for the FLSA Collective" and "only approximately four (4) months have passed since Defendant answered the Complaint" and this instant motion. *Id.* at 21. Plaintiff's request is denied without prejudice.

Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Mottahedeh v. United States*, 794 F.3d 347, 352 (2d Cir. 2015) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418, 125 S. Ct. 1807, 161 L. Ed. 2d 669 (2005)). "A statute of limitations may be tolled as necessary to avoid

---

[5] The Court notes Plaintiff's request for expedited discovery within 10 days of order. Dkt. No. 21-5, at 1. While the ten-day deadline proposed by Plaintiff is reasonable, (*see e.g., Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 170 (S.D.N.Y. 2014) ("Bloomberg is ordered to provide such information in electronically readable format within 10 days of this Court's order.")), the Court grants Defendant additional time to complete the required productions.


inequitable circumstances." *Santiago*, 2023 U.S. Dist. LEXIS 206817, 2023 WL 8003323, at *7 (citing **[*36]** *Iavorski v. United States INS*, 232 F.3d 124, 129 (2d Cir. 2000) (citations omitted). "Equitable tolling applies as a matter of fairness where a party has been prevented in some extraordinary way from exercising his rights." *Id.* Further, equitable tolling is considered "on a case-by-case basis to prevent inequity." *Warren v. Garvin*, 219 F.3d 111, 113 (2d Cir.), *cert. denied*, 531 U.S. 968, 121 S. Ct. 404, 148 L. Ed. 2d 312 (2000).

For an FLSA action, "the statute of limitations applicable to a plaintiff's claim continues to run until he or she has filed a written consent with the court to join the lawsuit." *Aleman-Valdivia*, 2021 U.S. Dist. LEXIS 189132, 2021 WL 4502479, at *7 (E.D.N.Y. Sept. 30, 2021) (citing 29 U.S.C. § 256(b)). "[C]ourts in this Circuit have permitted equitable tolling while the motion for conditional certification is before the court." *Aleman-Valdivia*, 2021 U.S. Dist. LEXIS 189132, 2021 WL 4502479, at *7 (citing *Fa Ting Wang v. Empire State Auto Corp.*, No. 14-CV-1491 (WFK) (VMS), 2015 U.S. Dist. LEXIS 99089, 2015 WL 4603117, at *14 (E.D.N.Y. July 29, 2015); *see also Chui v. Am. Yuexianggui of Li LLC*, No.18-CV-5091 (SJF) (AKT), 2020 U.S. Dist. LEXIS 117296, 2020 WL 3618892, at *10 (E.D.N.Y. July 2, 2020) ("Given the length of time that has passed since the instant motion was filed, and the diligence of Plaintiff's counsel in pursuing certification, the Court is granting equitable tolling from the date the motion was filed.").

In the context of FLSA conditional certification motions, there has indeed been an ongoing trend over in which courts have tolled the FLSA statute of limitations for potential opt-in plaintiffs. *See, e.g., Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 198-202 (S.D.N.Y. 2006); *Santiago*, 2023 U.S. Dist. LEXIS 206817, 2023 WL 8003323, at *7 (acknowledging "an ongoing trend over at least the last 17 years.") The general principle in doing so derives from "[t]he fact that the statute of limitations **[*37]** for opt-in plaintiffs' FLSA claims runs until they actually join the lawsuit; it does not relate back to the filing of the named plaintiff's complaint." *Gaspar v. Pers. Touch Moving, Inc.*, No. 13-CV-8187 (AJN), 2014 U.S. Dist. LEXIS 129856, 2014 WL 4593944, at *7 (S.D.N.Y. Sept. 15, 2014); *see also* 29 U.S.C. § 256(b). Further, "for the purposes of establishing the statute of limitations under the FLSA, a new cause of action accrues with each payday following an allegedly unlawful pay period." *Lee*, 236 F.R.D. at 199 (citation omitted). Thus, "[c]ourts often begin counting back from the date of the conditional certification order since the statute of limitations on FLSA claims continues to run until a plaintiff consents to join the action." *Garriga v. Blonder Builders Inc.*, No. 17-CV-497(JMA)(AKT), 2018 U.S. Dist. LEXIS 171887, 2018 WL 4861394, at *7 (E.D.N.Y. Sept. 28, 2018).

Here, Plaintiff has presented no "extraordinary circumstances" that stood in his way from exercising his rights under the FLSA and that warrant equitable tolling at this time. At best, this request is premature. "Because governing precedent does not permit equitable tolling here, [plaintiff's] application for a categorical ruling tolling the statute of limitations for all opt-in plaintiffs is denied." *Knox v. John Varvatos Enterprises Inc.*, 282 F. Supp. 3d 644, 660 (S.D.N.Y. 2017). "This ruling is without prejudice to any application by a plaintiff for equitable tolling that conforms to the requirements of the equitable tolling doctrine." *Id.* Therefore, Plaintiff's motion for equitable tolling is **[*38]** denied, without prejudice to renew.

## IV. Conclusion

For the reasons set forth above, the Court **grants in part and denies in part** Plaintiff's motion for conditional certification as a collective action under the FLSA pursuant to 29 U.S.C. § 216(b).

The Court further orders that:

>(1) by **April 15, 2024**, Defendant shall produce to Plaintiff, in computer readable format, the full names, current home address or last known address, cell phone number, work and personal email addresses, and dates of employment with job titles of all former and current hourly workers of Defendant at any point in time between August 23, 2020 and August 23, 2023;

>(2) By **March 29, 2024**, the parties are to meet and confer in good faith, and by **April 1, 2024**, the parties shall submit a revised Proposed Notice and consent form that complies with the directives set forth herein;

>(3) By **May 1, 2024**, Plaintiff or his designated representative shall cause a copy of the Notice and Consent to Join Form to be disseminated to the covered employees by first class mail, email, and text message.

**SO ORDERED**.

Dated: Brooklyn, New York

March 22, 2024

*/s/ Joseph A. Marutollo*

JOSEPH A. MARUTOLLO

United States Magistrate Judge

---

**End of Document**