UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DELANEY BRYANT, BRIANNA LEMMON, and VIOELT OSPINA, *on behalf of themselves and all others similarly situated*,<br><br>         Plaintiffs,<br><br>-against-<br><br>BUFFALO EXCHANGE, LTD.,<br><br>         Defendant. | 23-cv-8286 (AS)<br><br>OPINION AND ORDER |

ARUN SUBRAMANIAN, United States District Judge:

## BACKGROUND

Plaintiffs Delaney Bryant, Brianna Lemmon, and Violet Ospina bring this action on behalf of a putative class of retail employees employed by Defendant Buffalo Exchange at its New York locations. Am. Compl. ¶¶ 4–9, Dkt. 29. Plaintiffs allege that Buffalo Exchange failed to pay them on a weekly basis as required by New York Labor Law (NYLL) § 191(1)(a) and that they are therefore owed liquidated damages equal to 100% of the wages that were paid late. ¶¶ 49–53. Buffalo Exchange now moves to dismiss, arguing that there is no private right of action under New York law to sue for late payments.

## LEGAL STANDARDS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## DISCUSSION

### I. Legal Background

The present dispute centers on whether there is a private right of action under New York law to sue for violations of NYLL § 191, which requires certain employees to be paid weekly. The parties agree that § 198(1-a) authorizes private lawsuits for "underpayment[s]." *See* Dkt. 30-1 at 4–5; Dkt. 34 at 2–3. But they disagree as to whether late payments count as underpayments. Plaintiffs also say that even if late payments don't count, there is an implied right of action to sue for them.

"Federal courts applying state law 'are generally obliged to follow the state law decisions of state intermediate appellate courts.'" *Zachary v. BG Retail, LLC*, 2024 WL 554174, at *5

(S.D.N.Y. Feb. 12, 2024) (quoting *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 199–200 (2d Cir. 2005)). But here, the intermediate appellate courts disagree.

In 2019, the First Department held that late payments count as underpayments and that § 198(1-a) therefore provides an express private right of action to sue for such payments. *Vega v. CM & Assocs. Constr. Mgmt., LLC*, 107 N.Y.S.3d 286, 288 (1st Dep't 2019). The court relied on the dictionary definition of underpay, which "is defined as to pay less than what is normal or required." *Id.* (internal quotation marks omitted). The court reasoned that "[t]he moment that an employer fails to pay wages in compliance with section 191(1)(a), the employer pays less than what is required." *Id.*

The court also analogized to the U.S. Supreme Court's 1945 interpretation of the Fair Labor Standards Act of 1938 (FLSA). In *Brooklyn Savings Bank v. O'Neil*, the Court addressed whether an employee who accepts a "delayed payment of the basic statutory wages due" under FLSA "can validly release and waive … further right to recover liquidated damages under [FLSA]." 324 U.S. 697, 702–03 (1945). The Court said no, explaining that the liquidated damages provision "constitutes a Congressional recognition that failure to pay the statutory minimum on time may be so detrimental to maintenance of [workers]…that double payment must be made in the event of delay in order to insure restoration of the worker to that minimum standard of well-being." *Id.* at 707. The *Vega* court reasoned that NYLL similarly requires double payment in recognition of the harm caused by untimely payments. 107 N.Y.S.3d at 288.

In the alternative, the *Vega* court held that there is an implied private right of action for late payments. *Id.* at 288–89. To determine whether there is an implied right of action, New York courts consider "(1) whether the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) whether recognition of a private right of action would promote the legislative purpose; and (3) whether creation of such a right would be consistent with the legislative scheme." *Cruz v. TD Bank, N.A.*, 2 N.E.3d 221, 226 (N.Y. 2013) (citation omitted). The *Vega* court reasoned that (1) manual workers were of the class for whose particular benefit the statute was enacted, (2) allowing such workers to sue would promote § 191's purpose to protect workers dependent upon their wages for sustenance and §198's purpose of deterring violations of the labor laws, and (3) doing so would also be consistent with the legislative scheme because § 198 allows individuals to sue for labor-law violations even if the Commissioner chooses not to. 107 N.Y.S.3d at 289.

In 2024, however, the Second Department took the opposite position, holding that there is neither an express nor an implied private right of action for late payments. *Grant v. Glob. Aircraft Dispatch, Inc.*, 204 N.Y.S.3d 117, 125 (2d Dep't 2024). The Second Department reasoned that the "natural import" of underpayment "is that an employee has received a lesser amount of earnings than agreed upon, not that the employee received the agreed-upon amount one week later, on the regular payday." *Id.* at 122. The court pointed out that § 198(1-a) begins with a reference to making "*less* than the wage," suggesting that the statute provides a private right of action only when the wages are too low, not when they come too late. *Id.* at 122. The court also pointed out that § 198(1-a) "provides for liquidated damages as an 'additional amount,' clearly contemplating recovery of an underpayment as the primary, foundational remedy." *Id.*

The *Grant* court held that there was no implied private right of action either. *Id.* at 125. The court noted that since *Vega* was decided, the New York Court of Appeals had refused to recognize an implied right of action to sue for an employer's violation of NYLL's bar on wage kickbacks. *Id.* (citing *Konkur v. Utica Acad. of Sci. Charter Sch.*, 185 N.E.3d 483, 484 (N.Y. 2022)). The plaintiff in *Konkur* was a math teacher at a school with close ties to a Turkish religious leader. *Konkur*, 185 N.E.3d at 484–85. He alleged that he was coerced into paying some of his wages to the leader's movement in violation of NYLL § 198-b, which bars employers from requesting or demanding a "return, donation or contribution of any part … of said employee's wages." NYLL § 198-b(2). But § 198-b contains no express right of action, and the Court of Appeals held that there isn't an implied one either.

The court acknowledged that the first two factors for an implied cause of action were met: First, the plaintiff was "a member of the class of persons the statute was designed to protect." 185 N.E.3d at 485. Second, Article 6 of the Labor Law was intended to strengthen employees' rights, and allowing employees coerced into kicking back wages to sue would promote this goal. *Id.* at 486. But the court explained that the most important factor in determining whether there is an implied right of action is the third: "whether creation of such a right would be consistent with the legislative scheme." *Id.* at 485 (citation omitted). This factor "typically turns on the legislature's choice to provide one particular enforcement mechanism to the exclusion of others because it demonstrates that the legislature considered and decided what avenues of relief were appropriate." *Id.* (internal quotation marks omitted). Because there were "two robust enforcement mechanisms" for § 198-b—criminal prosecution by New York's Attorney General or civil prosecution by the Labor Department—the court declined to recognize a third. *Id.* at 486–87.

"[W]hen there is 'an apparent split in authority among the Appellate Divisions,' a federal court is not bound by the law of the department that would apply if the case were filed in state court where the federal court sits, but rather must predict 'how the Court of Appeals would rule.'" *Zachary*, 2024 WL 554174, at *5 (quoting *Michalski v. Home Depot, Inc.*, 225 F.3d 113, 116–17 (2d Cir. 2000)). Since *Grant*, almost all district courts in this circuit have predicted that the Court of Appeals would side with *Vega* and hold that there is either an express or implied private right of action for late payment of wages. *See, e.g.*, *Levy v. Endeavor Air Inc.*, 2024 WL 1422322, at *2 (E.D.N.Y. Mar. 29, 2024); *Garcia v. Skechers USA Retail, LLC*, 2024 WL 1142316, at *6 (E.D.N.Y. Mar. 15, 2024); *Bazinett v. Pregis LLC*, 2024 WL 1116287, at *7 (N.D.N.Y. Mar. 14, 2024); *Gamboa v. Regeneron Pharms., Inc.*, 2024 WL 815253, at *5–6 (S.D.N.Y. Feb. 27, 2024); *Zachary*, 2024 WL 554174, at *5–9. *But see Espinal et al. v. Sephora USA, Inc.*, 2024 WL 3589604, at *1, 8, 11 (S.D.N.Y. July 31, 2024); *Galante v. Watermark Servs. IV, LLC*, 2024 WL 989704, at *6 (W.D.N.Y. Mar. 7, 2024). This Court agrees that there is an express private right of action.

## II. Analysis

"In matters of statutory interpretation, legislative intent is the great and controlling principle." *Peyton v. New York City Bd. of Standards & Appeals*, 164 N.E.3d 253, 258 (N.Y. 2020) (internal quotation marks omitted). "Because the clearest indicator of legislative intent is the

statutory text, the starting point in any case of interpretation must always be the language itself, giving effect to the plain meaning thereof." *Id.* (internal quotation marks omitted) The provision at issue is in Article 6 of NYLL, which regulates the payment of wages. Article 6 does not impose a minimum wage or require employers to pay more for overtime work—those provisions (and their enforcement mechanisms) are elsewhere. *See, e.g.*, 19 N.Y.L.L. §§ 652, 663. Instead, Article 6 governs an assortment of other matters, including the frequency of payments, direct deposits, deductions, differential rates of pay based on protected status, wage notices, record-keeping, and wage kickbacks. 6 N.Y.L.L. §§ 191 (payment frequency), 192 (direct deposits), 193 (deductions), 194 (differential pay), 195 (wage notices and record-keeping), 198-b (wage kickbacks).

Section 198 deals with enforcement, and the subsection at issue here is a long one. It begins by authorizing the Commissioner of the New York Department of Labor to sue:

> On behalf of any employee paid less than the wage to which he or she is entitled … , the commissioner may bring any legal action necessary, … to collect such claim and … in addition to any other remedies and penalties … the commissioner shall assess against the employer the full amount of any such underpayment, and an additional amount as liquidated damages.

§ 198(1-a). Employees, by contrast, are not explicitly authorized to sue. But such authorization is suggested by the sentences that follow:

> In any action instituted in the courts upon a wage claim by an employee or the commissioner in which the employee prevails, the court shall allow such employee to recover the full amount of any underpayment, all reasonable attorney's fees, prejudgment interest as required under the civil practice law and rules, and, unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total amount of the wages found to be due . . . .

*Id.* Courts have therefore treated § 198(1-a) as providing an express cause of action for "wage claims" under Article 6. *See, e.g.*, *Vega*, 107 N.Y.S.3d at 288.

The question here is what counts as a "wage claim." Clearly, not every Article 6 violation does. For example, § 198 has separate, express causes of action for violations of Article 6's wage-notice and wage-statement provisions. *See* § 198(1-b), (1-c). And, as mentioned, the New York Court of Appeals has held that violations of § 198-b's bar on wage kickbacks are not cognizable as wage claims either. *Konkur*, 185 N.E.3d at 487–88.

The parties agree that wage claims involve underpayments, but they disagree as to whether a late payment counts as an underpayment. At first blush, Buffalo Exchange appears to have the better argument. The ordinary meaning of "underpay" is "to pay less than what is normal or required," not to pay less *often* than what is required. Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/underpayment (last visited August 5, 2024). And liquidated damages are allowed as an "additional amount" measured by reference to the "wages found to be due." § 198(1-a). This suggests that to bring a claim under § 198(1-a), an employee

4

must still be owed some amount of wages, recovered as the primary remedy, with liquidated damages allowed only under certain circumstances and measured by reference to the amount of wages the court has determined the employee is "owed." Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/due (last visited August 5, 2024). Here, although Plaintiffs argue that late payments are a form of underpayment, they are not seeking to recover *any* underpayment: instead of asking for liquidated damages as an "additional amount," they seek liquidated damages alone. *See* Am. Compl. ¶ 53. And the measure of those damages, they say, should be equal to the total amount of wages that were paid late even though those wages are not "due" because they were already paid. Plaintiffs' theory of how § 198(1-a) functions as a private right of action for § 191 violations is hard to reconcile with the statutory text.

But that's not the end of the matter. Section 198(1-a) is—as the Second Circuit has noted—materially indistinguishable from § 216 of FLSA. *See Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018) ("While the wording of the FLSA and NYLL liquidated damages provisions are not identical, there are no meaningful differences[.]"). And since 1945, the Supreme Court has interpreted § 216 to empower employees to do just what Plaintiffs say they can do here: recover liquidated damages equal to the amount of wages that were paid late. *See Rogers v. City of Troy, N.Y.*, 148 F.3d 52, 55–57 (2d Cir. 1998) (citing *Brooklyn Sav. Bank*, 324 U.S. at 697, 700)).

This is so despite the fact that such an interpretation of FLSA is just as awkward a fit for the statutory text as is Plaintiffs' analogous interpretation of § 198(1-a). Section 216 of FLSA states that "[a]ny employer who violates [FLSA's minimum-wage and overtime-compensation requirements] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). As with NYLL § 198(1-a), the plain text of this FLSA provision seems to envision a cause of action to recover unpaid wages with liquidated damages serving as an "additional" remedy, measured by reference to how much the employee recovered in unpaid wages. *Id.* But courts have interpreted this language to allow an employee to sue for late payments—rather than just unpaid amounts—and to recover liquidated damages alone in an amount equal to the wages that were paid late. *See Brooklyn Savings Bank*, 324 U.S. at 702–03; *Rogers*, 148 F.3d at 56; *Rigopoulos v. Kervan*, 140 F.2d 506, 507 (2d Cir. 1943); *Calderon v. Witvoet*, 999 F.2d 1101, 1108 (7th Cir. 1993); *Belizaire v. RAV Investigative & Sec. Servs. Ltd.*, 61 F. Supp. 3d 336, 360 (S.D.N.Y. 2014); *Asselta v. 149 Madison Ave. Corp.*, 65 F. Supp. 385, 387 (S.D.N.Y. 1945), *aff'd*, 156 F.2d 139 (2d Cir. 1946).

The Court predicts that the New York Court of Appeals would interpret § 198(1-a) in an analogous manner. The Court of Appeals has adopted the principle that when statutory language is "obviously transplanted from another legal source, whether the common law or other legislation, it brings the old soil with it." *CNH Diversified Opportunities Master Acct., L.P. v. Cleveland Unlimited, Inc.*, 160 N.E.3d 667, 673 (N.Y. 2020) (citation omitted); *accord George v. McDonough*, 596 U.S. 740, 746 (2022); *see also* Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 322–35 (2012) (prior-construction canon). Section 198(1-a), added in 1967, "obviously transplanted" language from § 216(b) of FLSA. *See Rana*, 887 F.3d at

5

123 ("[I]t is clear that the New York State legislature rewrote its liquidated damages provision to cover the same ground as the FLSA[.]"); *Gottlieb v. Kenneth D. Laub & Co.*, 626 N.E.2d 29, 32 (N.Y. 1993). So the "old soil"—allowing employees to sue for late payments alone and to recover liquidated damages equal to those late payments—comes too.

The *Grant* court's rationale for disregarding the interpretation of the analogous FLSA provision is unpersuasive. The *Grant* court seemed to think that although it makes sense to interpret payments that are late under FLSA's standard as underpayments, it does not make sense to do so for payments that are merely late under New York law. 204 N.Y.S.3d at 123. Under FLSA, there is no express requirement as to when wages must be paid but only an implied requirement that wages be paid promptly. *See Rogers*, 148 F.3d at 59 (describing FLSA's "implicit prompt payment requirement"). Section 191 of NYLL, by contrast, requires some workers to be paid every week. So it is true, as the *Grant* court stresses, that New York law's substantive requirement is stricter than FLSA's. But the Court does not see what difference that makes. In both cases, the employee has been fully paid by the time the lawsuit has been brought and thus has not been underpaid in the ordinary sense of the word. If a late payment, as defined by FLSA, counts as an underpayment under FLSA § 216, then a late payment, as defined by NYLL, must count as an underpayment under the analogous language of NYLL § 198(1-a).

And in any event, Article 6 of the Labor Law was "enacted to strengthen and clarify the rights of employees to the payment of wages." *Truelove v. Ne. Cap. & Advisory, Inc.*, 738 N.E.2d 770, 771 (N.Y. 2000). One way it did so was by requiring that certain employees be paid weekly instead of just promptly. The legislature later carried over the same language from FLSA that the Supreme Court had already interpreted as empowering employees to sue for late payments. *See Gottlieb*, 626 N.E.2d at 462. The logical conclusion is that the New York legislature intended to "strengthen" the prompt payment requirement for certain employees but decided to allow for the same private enforcement mechanism.

Finally, although the Court of Appeals has not addressed this question directly, it has suggested in dicta that § 198(1-a) provides a private right of action for § 191 violations. In deciding that § 198-b violations could not be enforced through § 198(1-a), the *Konkur* court wrote that this remedy must relate to "wage claims based upon violations of one or more of the substantive provisions of Labor Law article 6" and then identified Labor Law §191 as one such substantive provision. 185 N.E.3d at 487. The *Grant* court ignores that language. And to the extent that the *Grant* court argues that there is no support in the legislative history for this interpretation of § 198(1-a), courts, including the First Department, have in fact pointed to such history. *See Vega*, 107 N.Y.S.3d at 288 n.2; *Levy*, 2024 WL 1422322, at *2. In any event, "the clearest indicator of legislative intent is the statutory text," and the text here clearly mirrors FLSA. *Peyton*, 164 N.E.3d at 258.

Plaintiffs also say that even if there is no express private right of action, there is an implied one. Because the Court predicts that the Court of Appeals will find an express private right of action to enforce § 191, the Court does not reach this argument.

One final point: Plaintiffs submitted a supplemental letter, citing *Espinal*, 2024 WL 3589604, to argue that interpreting § 198(1-a) to allow plaintiffs to recover an amount equal to 100% of late wages would be "absurd" and "would also likely result in a finding that the liquidated damages provision is unconstitutional in every single case when it is applied to a failure to adhere to the proper payment schedule required by section 191." *Id.* at *5. The Court disagrees that allowing employees to recover 100% of late wages is a "disposition that no reasonable person could intend." Scalia & Garner, *Reading Law* 237; *see Brooklyn Sav. Bank*, 324 U.S. at 707–08 (explaining that late payment of wages "may be so detrimental to maintenance of the minimum standard of living 'necessary for health, efficiency, and general well-being of workers'" because employees may not have "sufficient resources to maintain their well-being and efficiency until such sums are paid"). And as to constitutionality, "now is not the proper stage of the case to address the constitutionality of a liquidated damages award since none has yet been made." *Espinal*, 2024 WL 3589604, at *5.

## CONCLUSION

Initially, Plaintiffs' interpretation of § 198(1-a) appears to be a poor fit for the provision's plain text. But the language in § 198(1-a) mirrors FLSA's enforcement provision. And courts (including the U.S. Supreme Court) have long interpreted that provision to allow employees who were paid late to sue for liquidated damages alone. Section 198(1-a) must be given an analogous interpretation.

Buffalo Exchange argues that if this Court holds that there is a private right of action, it should stay this case pending a decision by the New York Court of Appeals in *Grant*. Dkt. 36 at 6. But any decision by the Court of Appeals is far off, and it's not even certain that there will be one. A motion for reargument and leave to appeal remains pending before the Second Department. Dkt. 42-1. The Court will not delay litigation for a decision that may never come.

The Clerk of Court is directed to terminate Dkt. 30.

SO ORDERED.

Dated: August 6, 2024
       New York, New York

                                                 ARUN SUBRAMANIAN
                                                 United States District Judge